[No. A091318. First Dist., Div. Four. Apr. 17, 2001.]

MARY ROSE KACZOROWSKI, Plaintiff and Appellant, v.
MENDOCINO COUNTY BOARD OF SUPERVISORS, Defendant and
Respondent;
DON PERRY et al., Real Parties in Interest and Respondents.

**COUNSEL**

Mary Rose Kaczorowski, in pro. per., for Plaintiff and Appellant.

H. Peter Klein, County Counsel, and Frank Zotter, Jr., Chief Deputy County Counsel, for Defendant and Respondent.

Richard J. Henderson; Mannon & King and James King for Real Parties in Interest and Respondents.

## OPINION

KAY, J.—In some situations a proposed project approved by a local governmental entity subject to the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.)[1] may be appealed to the California Coastal Commission (Commission). The question presented by this appeal is whether, when such an appeal is taken to the Commission and it is the Commission which, after conducting a de novo proceeding, issues the permit for the project, an administrative mandamus challenge naming the local governmental entity, but not the Commission, is vulnerable to the claim that the Commission is an indispensable party. We agree with the trial court that the Commission is indeed an indispensable party.

## BACKGROUND

The Ten Mile River meets the Pacific Ocean on the Mendocino coast south of the Town of Seaside and north of Mackerricher State Park. Between the river and the Town of Inglenook to the south is a 389-acre parcel of land owned by Henry and Margaret Smith. Don and Margaret Perry wanted to build an inn[2] on four acres of the Smith parcel.

In November of 1997 the Mendocino County Planning Commission adopted a negative declaration approving a permit for the project without requiring preparation of an environmental impact report (EIR). (See §§ 21080, subd. (c), 21080.1; Cal. Code Regs., tit. 14, § 15064, subd. (f).) A number of interested groups, including the Sierra Club, appealed that decision to the Mendocino County Board of Supervisors (Board). On January 26, 1998, the Board in effect upheld the decision of the planning commission.

The opponents of the proposed project were notified that pursuant to section 30603 of the California Coastal Act (Coastal Act) (§ 30000 et seq.) they could appeal the Board's decision to the Commission. The opponents did so. In May of 1998 the Commission conducted a de novo hearing and

---

[1] Statutory references are to the Public Resources Code unless otherwise indicated.

[2] The project is described in various documents as "a 20 unit visitor serving facility, including 20 guest units in 7 separate structures, a lobby/meeting room/manager's quarters building, an employee utility building, 25 parking spaces, a sign, underground water tanks, wells, leach fields, driveway and fence." Staff for the Commission referred to the project as an "inn," and we have adopted the more comprehensible and less cumbersome description.

adopted a "resolution of approval" reading as follows: "The Commission hereby grants, subject to the conditions below, a permit for the proposed development on the grounds that the development, as conditioned, is in conformance with the certified County of Mendocino LCP [local coastal plan] . . . and will not have any significant adverse impacts on the environment within the meaning of the California Environmental Quality Act."

On March 18, 1999, plaintiff Mary Rose Kaczorowski, a member of the Sierra Club and a resident of Mendocino County, filed a petition for mandamus and injunctive relief. Her petition named the Board as defendant and the Perrys and Smiths as real parties in interest. The single cause of action was that the Board had violated CEQA by not requiring an EIR. The relief sought was (1) mandamus commanding the Board to set aside its approval of the project, require preparation of an EIR, and vacate its "Notice of Final Determination . . . filed February 19, 1999," and (2) mandamus and an injunction prohibiting real parties from "any actions . . . until such time as Respondents have fully complied with all requirements of CEQA and the CEQA Guidelines." In their answer real parties Perry and Smith raised the affirmative defense that plaintiff had failed to "join as a necessary party the . . . Commission."

Three months later, in June of 1999, plaintiff moved for a peremptory writ of mandate pursuant to Code of Civil Procedure section 1094.5 and the injunctive relief prayed for in her petition. After hearing argument, the trial court determined that plaintiff's "failure to name the . . . Commission as a party constitutes the failure to join an indispensable party pursuant to Code of Civil Procedure § 389. The court further finds that, the statute of limitations under . . . § 21080.5, subdivision (g) having expired, the . . . Commission no longer can be made a party to this action. The court therefore determines, pursuant to [Code of Civil Procedure] § 389, subdivision (b), that the . . . [¶] petition for a writ of mandate is denied." Plaintiff thereupon perfected this timely appeal.[3]

## REVIEW

The statute governing joinder of parties, Code of Civil Procedure section 389, provides in pertinent part:

"(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action

---

[3]The fact that plaintiff filed her notice of appeal before the trial court filed the order quoted above is without significance to her ability to maintain this appeal. (See Cal. Rules of Court, rule 2(c).)

shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.     .

"(b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder.

"(c) A complaint or cross-complaint shall state the names, if known to the pleader, of any persons as described in paragraph (1) or (2) of subdivision (a) who are not joined, and the reasons why they are not joined. . . ."

Indispensable parties have been identified as those who are essential for "a complete determination of the controversy" (*First Nat. etc. Bk. v. Superior Court* (1942) 19 Cal.2d 409, 415 [121 P.2d 729]; *Lushing v. Riviera Estates Assn.* (1961) 196 Cal.App.2d 687, 690 [16 Cal.Rptr. 763]) or the ability of a court to enter "any effective judgment" (*Writers Guild of America, West, Inc. v. Screen Gems, Inc.* (1969) 274 Cal.App.2d 367, 375 [79 Cal.Rptr. 208]). Whether a party qualifies as indispensable is ordinarily treated as a matter where the trial court has a large measure of discretion in weighing factors of practical realities and other considerations. (See *County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1151-1154 [63 Cal.Rptr.2d 277] and decisions cited.) Accordingly, the trial court's determination that the Commission was an indispensable party will be reversed only if it amounts to an abuse of discretion. (*Silver v. Los Angeles County Metropolitan Transportation Authority* (2000) 79 Cal.App.4th 338, 348-349 [94 Cal.Rptr.2d 287]; *People ex rel. Lungren v. Community Redevelopment Agency* (1997) 56 Cal.App.4th 868, 875 [65 Cal.Rptr.2d 786].)

■ The Coastal Act, adopted in 1976, required units of local government within the coastal zone to prepare a local coastal program (LCP) in consultation with the Commission and subject to certification by the Commission. (§§ 30500, 30511, 30512, 30513.) Once certified, an LCP can only be amended with the Commission's approval. (§ 30514.) Authority for ensuring compliance with a certified LCP is delegated by the Commission to the unit of local government responsible for implementing the LCP; the Commission retains a limited exclusive jurisdiction over some types of development, and a broader appellate authority over developments approved by units of local government. (§§ 30519, 30603.) The only grounds for appeal are that the locally approved development does not conform to the standards of a certified LCP or the Coastal Act's access policies. (§ 30603, subd. (b)(1).) If the Commission determines that an appeal presents a "substantial issue," the permit application is reviewed de novo; in effect, the Commission hears the application as if no local governmental unit was previously involved, deciding for itself whether the proposed project satisfies legal standards and requirements. (§§ 30604, 30625, subd. (b)(1); Cal. Code Regs., tit. 14, §§ 13115, 13119, 13321.) Although the Commission is not categorically exempt from CEQA requirements (see § 21080; Cal. Code Regs., tit. 14, §§ 15260-15285), its permit appeal procedure is treated as the functional equivalent of the EIR process. (§ 21080.5; *San Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 551-552 [45 Cal.Rptr.2d 117] [describing effect of § 21080.5]; Cal. Code Regs., tit. 14, § 15251, subd. (c).) If there is need for a change of the conditions for the permit, any amendment will come only from the Commission. (See Cal. Code Regs., tit. 14, §§ 13164-13168.)

Virtually all of this discussion is useful in demonstrating why the Commission qualifies as an indispensable party. Mendocino County has had a certified LCP since 1985. There is no question that the Commission had the jurisdiction to hear the appeal from the Board's decision. When, in the course of hearing that appeal, the Commission found a "substantial issue," it then heard the entire permit application de novo. The scope of that hearing decisively affects the status of the Board and the Commission: "A hearing *de novo* literally means a new hearing, or a hearing the second time. [Citation.] Such a hearing contemplates an entire trial of the controversial matter in the same manner in which the same was originally heard. It is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held. . . . The decision therein . . . takes the place of and completely nullifies the former determination of the matter." (*Collier & Wallis, Ltd. v. Astor* (1937) 9 Cal.2d 202, 205 [70 P.2d 171]; accord, *REA Enterprises v. California Coastal Zone*

*Conservation Com.* (1975) 52 Cal.App.3d 596, 612 [125 Cal.Rptr. 201] [construing comparable provisions of California Coastal Zone Conservation Act of 1972].) Once the Commission conducted its de novo examination, there was no longer a decision by the Board to review. More fundamentally, the Board—although still interested in the matter—was no longer plaintiff's adversarial opponent. The Commission's findings that the proposed inn complied with CEQA superseded equivalent findings by the Board (see § 21080.5, subd. (d)(2)(i); Cal. Code Regs., tit. 14, § 13096, subd. (a)) in precisely the same manner that the Board's decision superseded that of the planning commission. It was the Commission, not the Board, which issued the permit authorizing real parties to build their inn. The conditions of that permit were fixed by the Commission, not the Board. One of the Commission's "standard conditions" is that it is the Commission that has the responsibility to ensure that the inn is constructed "in strict compliance" with the conditions imposed by the Commission. Another "standard condition" is that "Any deviation from the approved plans must be reviewed and approved by [Commission] staff and may require Commission approval."

If the court had entered a judgment against the Board, that judgment would not bind the Commission and would be vulnerable to collateral attack by the Commission. (*Silver v. Los Angeles County Metropolitan Transportation Authority, supra,* 79 Cal.App.4th 338, 349-350; *Sierra Club, Inc. v. California Coastal Com.* (1979) 95 Cal.App.3d 495, 501-502 [157 Cal.Rptr. 190].) A judgment in the absence of the Commission would not be "a complete determination of the controversy." (*First Nat. etc. Bk. v. Superior Court, supra,* 19 Cal.2d 409, 415.) A judgment without the Commission would be neither "effective" (*Writers Guild of America, West, Inc. v. Screen Gems, Inc., supra,* 274 Cal.App.2d 367, 375) nor "adequate" (Code Civ. Proc., § 389, subd. (b)(3)). Plaintiff was unable to advise the trial court how these difficulties could be overcome or a judgment shaped to afford her relief without prejudice to the Commission. (See Code Civ. Proc., § 389, subd. (b)(2); *Save Our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686, 699 [49 Cal.Rptr.2d 847].) She likewise offered neither explanation for failing to join the Commission nor suggestion how the Commission could be joined 13 months after it had issued the permit to real parties. (See Code Civ. Proc., § 389, subd. (c); *Sierra Club, Inc. v. California Coastal Com., supra,* at p. 504; *Sanders v. Fuller* (1975) 45 Cal.App.3d 994, 1002 [119 Cal.Rptr. 902].) Accordingly, plaintiff has failed to establish that the trial court abused its discretion. (*Silver v. Los Angeles County Metropolitan Transportation Authority, supra,* at pp. 348-349; *County of San Joaquin v. State Water Resources Control Bd., supra,* 54 Cal.App.4th 1144, 1149, 1154.) The point may be stated even more emphatically. In light of the indisputable

centrality of the Commission, its status as an indispensable party appears as a matter of law. (See *Ambassador Petroleum Co. v. Superior Court* (1930) 208 Cal. 667, 671 [284 P. 445]; *Save Our Bay, Inc. v. San Diego Unified Port Dist., supra,* at p. 692.)

Plaintiff had 30 days following the Commission's decision within which to commence a judicial challenge. (§ 21080.5, subd. (g).) That period had expired more than a year before plaintiff initiated this action against the Board and real parties in interest. The absence of an indispensable party which could not be joined was dispositive of plaintiff's petition. (See *Sierra Club, Inc. v. California Coastal Com., supra,* 95 Cal.App.3d at pp. 502-503.) This conclusion moots all other arguments made by the parties.

The order is affirmed.

Reardon, Acting P. J., and Sepulveda, J., concurred.